ESTATE OF HERBERT R. PENNEY, DECEASED, MILTON H. PENNEY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5399-70.    Filed October 17, 1972.

*Richard R. Stedman* and *William W. Ellis, Jr.*, for the petitioner.
*Ross E. Springer*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency of $2,392,016.62 in the estate tax liability of the estate of decedent Herbert R. Penney. Prior to the trial the estate made several concessions so that the remaining issue simply concerns the ultimate burden of the Federal estate tax liability under Ohio law.

### FINDINGS OF FACT

The petitioner is the Estate of Herbert R. Penney, deceased, Milton H. Penney, executor, Defiance, Ohio. The estate tax return for the estate was filed with the district director of internal revenue in Cincinnati, Ohio. Decedent died testate on March 2, 1966, in Columbus, Ohio. On March 10, 1966, Milton Penney was duly appointed executor of the decedent's estate by the Probate Court of Franklin County, Ohio.

On July 25, 1941, Herbert Penney created a revocable trust naming the Huntington National Bank of Columbus trustee. The trust was amended in 1946 and again for the last time in 1948 in order to provide his estate with the maximum Federal estate tax marital deduction allowable. Decedent also created four irrevocable trusts during his lifetime which on the date of death contained assets in the aggregate worth $5,272,000. No issue concerning the irrevocable trusts is before us. The fair market value of the assets in the revocable trust on the date of death was $9,765,372.32. On that date the Huntington Bank was trustee and the members of the advisory committee established by the trust consisted of Milton H. Penney, Vivian Nadine Penney Moor, and Dorothy Penney Southard, the children of the decedent.

Paragraph Eleventh of the revocable trust directed that the trust principal was to be divided, upon settlor's death, one-half to be held

in trust for Anna Cornelia Penney, decedent's widow, and one-half to be divided per stirpes and held in trust for his children or their descendants at least until attainment of the age of 25. Anna Cornelia Penney was given an absolute power of appointment over the fund established for her as well as the power to withdraw part or all of the principal thereof during her life.

Paragraph Eighth of the trust authorized the trustee with the approval of the advisory committee to pay the executor of settlor's estate a sufficient sum to discharge debts and all taxes of the estate in the event the assets available to the executor were insufficient. Counsel for the executor and for the trustee is also counsel for the estate in this proceeding. On June 2, 1967, the estate received $2,438,856.30 from the trustee on the instruction of such counsel to help defray debts and taxes.

Herbert Penney's will provided, after payment of debts and taxes, for cash gifts in trust for each of his five minor grandchildren, six pecuniary gifts to charitable organizations, and a bequest to Anna Cornelia Penney of an amount of property qualifying for the Federal estate tax marital deduction which would be sufficient to secure the estate a deduction equal to 50 percent of the value of the adjusted gross estate as finally determined after taking into account other qualifying property passing to her outside the will. There were additional minor gifts.

The fair market value of the assets in decedent's estate on the date of death is shown below:

| Schedules of estate tax return | Value of assets in probate estate | Value of assets in nonprobate property |
|---|---|---|
| A [Real estate] | 0 | 0 |
| B [Stocks and bonds] | $3,922,482.20 | 0 |
| C [Mortgages, notes, and cash] | 781,894.97 | 0 |
| D [Insurance] | 0 | $45,568.80 |
| E [Jointly owned property] | 0 | 0 |
| F [Miscellaneous] | 18,309.98 | 0 |
| G [Transfer during decedent's life] | 0 | 9,765,372.32 |
| Total | 4,722,687.15 | 9,810,941.12 |

In October 1966 the trustee distributed to decedent's widow one-half of the trust corpus prior to payment of debts and taxes by the estate or any contribution to the estate by the trust under paragraph Eighth of the trust agreement. Prior to payment of all debts and taxes the estate made several distributions. The six charitable legacies were disbursed in April 1967. At that time the executor also distributed securities to the trustee of the five trusts established for decedent's grandchildren. The amount of $47,198.84 and securities worth $1,950,000 were distributed to Anna C. Penney in satisfaction of the marital bequest.

No will construction action or declaratory judgment action was

filed with the probate court in the matter of the Herbert Penney estate. Nor was there a provision in either the will or the trust concerning the allocation of Federal estate tax among decedent's successors.

OPINION

Congress has reserved to the States the question of the incidence of the burden of the Federal estate tax as among the various successors to the property of decedents. *Riggs* v. *Del Drago*, 317 U.S. 95 (1942). Ohio, like many States, in turn permits the donor himself to fix the ultimate burden of the tax by appropriate clear instructions, a so-called "tax clause," in the will. See *Oviatt* v. *Oviatt*, 24 Ohio Misc. 98, 52 Ohio Op. 2d 325, 260 N.E. 2d 136 (1970), where there was such a "tax clause," i.e. that the share bequeathed to his wife "shall not be reduced by any state, inheritance transfer, succession or like tax," and the authorities cited therein. It is the absence of such a "tax clause" in the governing instruments before us—unusual in an estate of this size—that provokes the present controversy.

Herbert Penney established a revocable inter vivos trust, one-half of which was to be held for his surviving spouse upon his death. By his will Penney, otherwise, made certain charitable bequests and a general marital bequest designed to increase to 50 percent of the adjusted gross estate the amount of all property passing to his spouse which qualified for the marital deduction.

The estate contends that Ohio follows the doctrine of equitable apportionment and that the doctrine as announced in that State requires, in the absence of testator's contrary directions, that property qualifying for the marital deduction under section 2056, I.R.C. 1954,[1] be exonerated from the payment of Federal estate tax. The estate argues on the same premise that the charitable bequests in the will of Herbert Penney should not bear any of the burden of the tax, since the bequests, like the marital transfer, do not generate Federal estate tax. The Commissioner takes a narrower view of the treatment of the doctrine of equitable apportionment by the Ohio courts and concludes that the marital and charitable transfers must contribute. This determination alone leads to an increased overall liability, since the amounts of the deductions allowable under sections 2055 and 2056 must be reduced by all taxes charged against them. Cf. sec. 20.2055–3(a), Estate Tax Regs., and sec. 2056(b)(4)(A) and sec. 20.2056(b)–4(c), Estate Tax Regs.

Further, the Commissioner contends that it was Penney's intent that all the assets of the probate estate were first to be expended to

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

satisfy the Federal estate tax liability before any funds were to be contributed by the trustee of the inter vivos revocable trust for that purpose. If this is true, the tax would totally consume the probate estate and cause the failure of the marital and charitable bequests in the will. The estate counters that under Ohio law nonprobate assets includable in the gross estate for Federal estate tax purposes, such as the trust assets, must contribute their share of the Federal estate tax, unless there is a clearly stated contrary intent.

How far Ohio has extended the plastic concept of equitable apportionment in resolving the numerous questions that may arise in fiduciary administration is a matter open to question. In this case the estate uses the term as a shorthand really for two distinct contentions about Ohio law, first, that transfers that generate no estate tax are exonerated from liability, and second, that nonprobate assets which are includable in the gross estate must contribute their ratable share of the amount of estate tax due. Both call for a form of equitable apportionment, which is merely an application of the sweeping maxim "equality is equity." However, we think that only the second contention states the law of Ohio.

The Ohio legislature has not dealt with the question of equitable apportionment. It appears that only Kentucky [2] and Ohio have introduced some kind of apportionment without the aid of statute, and in the latter jurisdiction there have been few developments since 1954. In *Campbell* v. *Lloyd*, 162 Ohio St. 203, 122 N.E. 2d 695 (1954), certiorari denied 349 U.S. 911 (1955), the Ohio Supreme Court overruled in part its prior decision in *Miller* v. *Hammond*, 156 Ohio St. 475, 104 N.E. 2d 9 (1952), in which it was held that the share of a surviving spouse electing *against* the will should be carved out of the estate before charging the Federal estate tax. See also *Estate of Rose Gerber Jaeger*, 27 T.C. 863 (1957), affirmed per curiam 252 F. 2d 790 (C.A. 6, 1958) ; *Estate of Frank Pangas*, 52 T.C. 99 (1969). However, *Campbell* distinguished and left standing *McDougall* v. *Central Nat. Bank of Cleveland*, 157 Ohio St. 45, 104 N.E. 2d 441 (1952). We think the latter decision squarely supports the estate's contention that the tax should be prorated between the probate and trust assets includable in the gross estate. In accordance with the command of *McDougall*, we hold that the trust will be treated for Federal estate tax purposes as having contributed such portion of the total tax payable as the value of the trust assets, for estate tax purposes, bears to the sum of (a) the taxable estate, for estate tax purposes, and (b) the exemption allowed in computing the taxable estate, determined under section 2052. 104 N.E. 2d at 448. Consequently the estate will be relieved of

---

[2] *Lincoln Bank & Trust Co.* v. *Huber*, 240 S.W. 2d 89 (Ky. 1951).

part of the asserted deficiency because the probate estate will not be entirely consumed by estate taxes.

We find no intention clearly expressed in decedent's testamentary scheme that the widow's share be exonerated from the burden of the estate tax. Neither can we agree with the estate's suggestion that *McDougall* also stands for a policy that transfers which do not generate tax should not share the liability for tax. The contrary indication given by *Campbell* alone disproves that. However in *Hall* v. *Ball*, 162 Ohio St. 299, 123 N.E. 2d 259 (1954), the Ohio Supreme Court extended *Campbell's* policy disfavoring exoneration to charitable bequests, and on that authority we must hold that the charitable bequests in decedent's will must bear part of the tax. We have found no case directly in point, but it is only a short step from *Hall* to the conclusion that the marital transfers in the will and trust likewise should bear part of the Federal estate tax burden.

*Decision will be entered under Rule 50.*