ESTATE OF HANS W. VAHLTEICH, DECEASED, JOSHUA LEVINE AND BEVERLY V. DELANEY, CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Vahlteich v. Commissioner
Docket No. 13655-92
United States Tax Court
T.C. Memo 1994-168; 1994 Tax Ct. Memo LEXIS 169; 67 T.C.M. (CCH) 2704; April 18, 1994, Filed *169 D's estate included a QTIP trust that was formed by D's deceased wife, and for which her estate had previously taken a deduction under sec. 2056(b)(7). D's will directed that any estate tax imposed in relation to any trust included in his taxable estate would be paid out of his residuary estate without apportionment against the legatees, beneficiaries, donees, or transferees. Following D's death, his co-executors (Ps) calculated his Federal estate tax utilizing the estate tax apportionment provision prescribed in Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990); Ps argue here that the apportionment provision applies because D's will did not elect out of that provision. Held, D's direction in his will constituted an election out of the apportionment provision, and Ps may not use it to calculate D's Federal estate tax. For petitioners: Russell S. Knapp. For respondent: Bruce Wilpon and Gary Botwinick. LARO
LARO
MEMORANDUM OPINION LARO, Judge: This case is presently before the Court on cross-motions for summary judgment under Rule 121. [1] Respondent determined a deficiency of $ 1,042,218 in the Federal estate tax of the Estate of Hans W. Vahlteich, Deceased, Joshua Levine and Beverly V. *170 Delaney, co-executors (petitioners), and reflected her determination in a notice of deficiency dated April 7, 1992. Petitioners filed a petition on June 19, 1992. Respondent and petitioners have both alleged in their respective motions that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. We agree with their allegation; the case is ripe for summary adjudication. The sole issue for decision is whether the estate tax apportionment provision prescribed in Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990), allows petitioners to recover certain amounts from a trust that is "qualified terminable interest property" (QTIP trust). The certain amounts that petitioners seek to recover represent the estate taxes paid on account of the inclusion of the QTIP trust in the taxable base *171 of the estate. We hold that Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990), does not allow petitioners to recover these amounts from the QTIP trust because the decedent's will expresses an unambiguous intention that the apportionment statute not apply. Background
Hans Walter Vahlteich (Decedent) died on August 31, 1989. At the time of his death, Decedent was a resident of the State of Ohio. Decedent's Last Will and Testament (Will), dated February 10, 1989, was duly admitted to probate by the Probate Court in Cuyahoga County at Cleveland, Ohio. The Will provided, in part, for the following specific bequests to family members: (1) All personal property to Decedent's daughter, Beverly V. Delaney (Delaney), (2) $ 5,000 to Decedent's brother-in-law, Fenelon McCollum, and (3) $ 100,000 to each of Decedent's surviving grandchildren. The Will also provided that: (1) The first $ 1,000,000 of the probate residue would pass into a trust for the benefit of Delaney during her life, remainder upon her death to a certain New York educational corporation (College), (2) the next $ 1,000,000 would pass to College, and (3) the remaining residue would pass to certain qualified charities *172 (Charities) in designated proportions. Decedent's estate tax return was filed timely with the Internal Revenue Service on Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return. This Form reported, inter alia: (1) A gross estate of $ 10,823,049.63, (2) allowable deductions of $ 7,346,415.63, of which $ 7,048,798.01 were charitable deductions, (3) a taxable estate of $ 3,476,634 (i.e., $ 10,823,049.63 - $ 7,346,415.63), and (4) a net estate tax of $ 1,277,491. The trusts that were included in Decedent's gross estate were: (1) A QTIP trust of $ 3,185,646.52, and (2) a "split interest trust", within the meaning of section 4947(a)(2), of $ 51,155.22. The QTIP trust was the only trust that was in existence at the time that Decedent executed the Will. The split interest trust included in Decedent's gross estate was not included in his taxable estate, and the estate paid no estate tax with respect thereto. Decedent had made a gift of the split interest trust to College on June 6, 1989. To reflect this gift, the value of the split interest trust was included in Decedent's gross estate as a "Transfer During Decedent's Life", and was deducted from his gross estate *173 as a "Charitable, Public, and Similar Gifts and Bequests". The estate paid estate taxes with respect to 100 percent of the QTIP trust. Decedent's deceased wife [2] had formed the QTIP trust included in Decedent's gross estate, and her estate had previously taken a deduction under section 2056(b)(7). [3] Upon Decedent's death, approximately one-half of the QTIP trust passed to a second trust formed for the benefit of Delaney and her husband, during their lives, and various universities at their deaths; the remainder of the QTIP trust passed to the Charities. In computing Decedent's estate tax liability, petitioners applied the apportionment provision in Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990), and requested and recovered $ 852,725 from the QTIP trust for its pro rata share of the estate tax burden. Respondent later determined that Ohio Rev. *174 Code Ann. sec. 2113.86(I) (Page 1990), did not apply to Decedent's estate, and calculated Decedent's estate tax by allocating the entire estate tax to the residue of the probate estate. This determination reduced Decedent's charitable deduction by $ 1,894,943 (i.e., the reduction in the amount of the probate residue passing to the Charities), and increased his taxable estate by a like amount. Respondent's determination was based on her reading of Paragraph First of the Will. Paragraph First of the Will provides: I direct that all my just debts, funeral and administration expenses be paid as soon as practicable after my decease and that all transfer, estate or inheritance taxes, including any interest and penalties thereon, imposed by any taxing authority upon or in relation to any property owned by me at the time of my death which is disposed of by this Will or any Codicil to it, or upon or in relation to any trust, gift, insurance, annuity, joint property or transfer, included as part of my taxable estate, shall be paid as an expense out of my residuary estate (as hereinafter defined) without apportionment against the legatees, beneficiaries, donees or *175 transferees thereof. [Emphasis added.]
Discussion
Motion for Summary Judgment
Summary adjudication is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). The principle of summary adjudication is specifically recognized by this Court, and is deeply ingrained in our procedural rules. See Rule 121. Rule 121(a) provides that either party may move for summary adjudication in his or her favor upon any or all parts of the legal issues in controversy. The Court may render a decision through summary adjudication, as a matter of law, if there is no genuine issue as to any material fact. Rule 121(b); Apple Computer, Inc. v. Commissioner, 98 T.C. 232 (1992); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). The Court will not resolve disagreements over material factual issues in a summary judgment proceeding. Espinoza v. Commissioner, supra at 416; Matson Navigation Co. v. Commissioner, 67 T.C. 938 (1977). *176 Respondent and petitioners have expressed no disagreement on any material factual issue. The parties agree that there is no genuine issue of material fact with respect to their case, and that the only issue is a legal one concerning the application of Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990). We agree with the parties, and decide this case through summary adjudication as a matter of law. Application of Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990)
It is firmly established that Federal law governs the determination of the amount of the Federal estate tax, but State law normally has a bearing on the estate tax's ultimate impact through apportionment of the estate tax among the beneficiaries. Riggs v. Del Drago, 317 U.S. 95 (1942); see also Estate of Penney v. Commissioner, 504 F.2d 37, 40 (6th Cir. 1974), revg. and remanding 59 T.C. 102 (1972); Estate of Swallen v. Commissioner, T.C. Memo. 1993-149. The State law to be applied in the instant case is the law of the State of Decedent's residence. Accordingly, Ohio law affects the allocation of *177 the burden of the estate taxes that are payable on Decedent's estate. Estate of Penney v. Commissioner, supra at 40. When a Federal tax liability hinges on the characterization of the underlying property interests or property rights under State law, we must look to the interpretation of the applicable State law by that State's highest court. If that court has not spoken on the issue at hand, then we, like other Federal courts, must apply what we determine the State law to be, after reviewing, and giving "proper regard" to, any rulings of other courts located in the State. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); Robinson v. Commissioner, 102 T.C.    ,     (1994). We have found no case in which Ohio's highest court, the Ohio Supreme Court, has decided the issue or addressed the statutory provision before us today. We have also found no cases in which any other Ohio court has addressed this issue or provision. Accordingly, having found no applicable law in the State of Ohio, we proceed to interpret the issue and provision at hand as if we were sitting as a court of the State of Ohio. *178 Commissioner v. Estate of Bosch, supra at 465. The rules in Ohio with regard to apportionment are contained in Ohio Rev. Code Ann. sec. 2113.86 (Page 1990). In relevant part, that section provides that: (A) Unless a will or other governing instrument otherwise provides, and except as otherwise provided in this section, a tax shall be apportioned equitably in accordance with the provisions of this section among all persons interested in an estate in proportion to the value of the interest of each person as determined for estate tax purposes. * * * (I) If any part of an estate consists of property, the value of which is included in the gross estate of the decedent by reason of section 2044 of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C.A. 2044, as amended, or of section 5731.131 * * * of the Revised Code, the estate is entitled to recover from the persons holding or receiving the property any amount by which the estate tax payable exceeds the estate tax that would have been payable if the value of the property had not been included in the gross estate of the decedent. This division *179 does not apply if a decedent provides otherwise in his will or another governing instrument and the will or instrument refers to either section mentioned in this division or to qualified terminable interest marital deduction property. [Emphasis added.]
Subsection (A) of Ohio Rev. Code Ann. sec. 2113.86 (Page 1990), which was enacted in 1981, contains the general estate tax apportionment provision for the State of Ohio. Pursuant to subsection (A), estate taxes generally are apportioned among all interested persons based on the value of each person's interest for estate tax purposes. As an exception to this general rule, however, the governing document (e.g., a will) can provide otherwise. Subsection (I) of Ohio Rev. Code Ann. sec. 2113.86 (Page 1990), was enacted in 1986; subsection (I) specifically addresses QTIP property that was included in an estate under section 2044. [4] Because of the specific reference in subsection (I) to QTIP property, subsection (I) "trumps" subsection (A) for purposes of the issue at hand. See Ohio Rev. Code Ann. sec. 2113.86(A) (Page 1990) (subsection (A) applies "except as otherwise provided" in Ohio Rev. Code Ann. sec. 2113.86 (Page 1990)). *180 Under subsection (I), an estate generally is entitled to recover from the persons holding or receiving the QTIP property any amount by which the estate tax payable exceeds the estate tax that would have been payable if the value of the property had not been included in the decedent's gross estate. Subsection (I) allows a testator to elect out of this right of recovery; such an election is accomplished if: (1) The testator provides in the governing document that he or she does not want the estate tax to be apportioned in this fashion, and (2) the document refers to either section 2044, Ohio Rev. Code Ann. sec. 5731.131 (Page 1991), [5] *181 or qualified terminable interest marital deduction property. [6]
It is the quintessential responsibility of the judiciary to ascertain the intent of a testator in drafting his or her governing document, and to interpret that document consistently with the testator's intent so as to give effect to his or her intent wherever legally possible. Solomon v. Central Trust Co., N.A., 584 N.E.2d 1185, 1187 (Ohio 1992); Tootle v. Tootle, 490 N.E.2d 878, 881 (Ohio 1986). Indeed, as stated by the Ohio Supreme Court, "The court's sole purpose in an action seeking construction of a will is to ascertain and carry out the intention of the testator." Sandy v. Mouhot, 438 N.E.2d 117, 118 (Ohio 1982); see also Townsend's Executors v. Townsend, 25 Ohio St. 477 (1874). *182 In determining intent, the focus is on the language in the governing document; the document is construed as a whole, and every phrase is given its ordinary meaning, after taking into account the usual significance of the words used. Stevens v. National City Bank, 544 N.E.2d 612, 615-616 (Ohio 1989); Ohio Citizens Bank v. Mills, 543 N.E.2d 1206, 1208 (Ohio 1989); see also Wittenberg Univ. v. Waterworth, 469 N.E.2d 970 (Ohio Ct. App. 1984). Interpretation of language in the governing document is made by assuming that the testator knew and understood the relevant laws of the State of his or her domicile at the time that he or she executed the document. The language in the governing document must be interpreted in light of that law. Solomon v. Central Trust Co., supra at 1189, 1191; Central Trust Co. v. Smith, 553 N.E.2d 265, 269 (Ohio 1990). Petitioners argue that Decedent's intent is not dispositive of the issue at hand because the "clear and unambiguous" language of Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990), dictates *183 a resolution contrary to Decedent's intent. In this regard, petitioners argue, Decedent did not properly elect out of the estate tax apportionment provision prescribed in Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990), because the Will does not contain a "specific reference" to the terms "section 2044", "Ohio Rev. Code Ann. sec. 5731.131" (Page 1991), or "qualified terminable interest marital deduction property". Accordingly, petitioners conclude, Decedent's estate may recover from the QTIP trust the amount of estate taxes attributable to its inclusion in the estate. We disagree; we do not believe that the governing document must make a "specific reference" to the terms "section 2044", "Ohio Rev. Code Ann. sec. 5731.131" (Page 1991), or "qualified terminable interest marital deduction property", in order to effectuate an election out of the apportionment provision prescribed in Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990). If that was the case, then the Ohio General Assembly could easily have said so. See, e.g., Ohio Rev. Code Ann. sec. 1339.45 (Page 1993) (tax exoneration clause does not apply to generation-skipping tax "unless the provision of the will or trust agreement, *184 specifically states, using the words 'generation-skipping transfer tax,' that the payment of the tax imposed under that chapter is included within the provision of the will or trust agreement" (emphasis added)). We are convinced that Decedent's reference to "any trust" in Paragraph First of the Will is a reference to the QTIP trust. The QTIP trust was the only trust in existence at the time that the Will was drafted, and was the only trust included in Decedent's taxable estate. The Will was drafted after the passage of Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990), and Decedent is presumed to have known of that section. Solomon v. Central Trust Co., supra at 1189, 1191; Central Trust Co. v. Smith, 553 N.E.2d 265, 269 (Ohio 1990). In addition, Paragraph First of the Will provides that no apportionment of estate taxes will be made with respect to both property owned by Decedent at the time of his death and other specified property (e.g., any trust) included as part of his taxable estate. We must assume that Decedent meant what he said when he used these words, and we will not ascribe a meaning contrary *185 to the ordinary and plain meaning of the words that he used. Stevens v. National City Bank, supra at 615-616; Ohio Citizens Bank v. Mills, supra at 1208; Oglesbee v. Miller, 111 Ohio St. 426, 433 (1924); see also Wittenberg Univ. v. Waterworth, supra.
We are also convinced that Decedent intended to have no apportionment of his estate taxes. Such an intent is seen clearly from Paragraph First of the Will which provides that "All transfer, estate or inheritance taxes * * * in relation to any trust * * * included as part of my taxable estate, shall be paid as an expense out of my residuary estate (as hereinafter defined) without apportionment". By asking this Court to allow them to apportion Decedent's estate taxes, notwithstanding this language in the Will, petitioners are asking us to disregard this language and read it right out of the Will. We do not believe that this language is surplusage that should be read out of the Will. Accordingly, we hold that Decedent properly effectuated an election out of the estate tax apportionment provision prescribed *186 in Ohio Rev. Code Ann. sec. 2113.86(I) (Page 1990), because the Will contained both an instruction that Decedent wanted no apportionment of estate taxes, and a reference to the QTIP trust. For petitioners to decide unilaterally after Decedent's death that it was more advantageous for Decedent to have used apportionment constitutes no more than sophisticated post mortem tax planning, rather than Decedent's intent as communicated through the Will. To this the Court will not give effect. In other words, an executor does not have the liberty or the power to rewrite a will for a testator/decedent in contravention of the language that the testator/decedent used in his or her will. Accord Cleveland Trust Co. v. Frost, 142 N.E.2d 507, 510 (Ohio 1957). We have considered all other arguments made by petitioners and find them to be without merit. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code for the time of the decedent's death.↩
2. Decedent's wife died on Nov. 28, 1984.↩
3. Accordingly, the value of the QTIP trust was required to be included in Decedent's estate. Sec. 2044(a) and (b)(1)(A)↩.
4. Ohio Rev. Code Ann. sec. 2113.86(I)↩ (Page 1990), may be compared with sec. 2207A.
5. Ohio Rev. Code Ann. sec. 5731.131 (Page 1991), contains rules that are applied to determine the value of a gross estate when the decedent had an income interest for life in certain property (e.g., property for which a marital deduction was allowed under sec. 2056(b)(7)). Ohio Rev. Code Ann. sec. 5731.131 (Page 1991), essentially tracks sec. 2044↩.
6. The term "qualified terminable interest marital deduction property" is not defined in the Ohio Revised Code, and our research has located no cases in which the term has been used by an Ohio court. We assume that the Ohio General Assembly used the term to refer to property that is QTIP.↩